`IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN GIACONIA, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 08-1299 |
| v. | : | |
| DELAWARE COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

Giles, J.                                                                                                   September 29, 2008

Before the court is Defendants Delaware County Society for the Prevention of Cruelty to Animals ("DCSPCA") and William Vernon's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b) (Doc. No. 5), Plaintiff's Response in Opposition (Doc. No. 9), and Defendants' Reply (Doc. No. 10). For the reasons that follow, Defendants' Motion to Dismiss is granted.

### Facts and Procedural History

The court recites the facts in the light most favorable to Plaintiff.

Plaintiff Kathryn Giaconia has brought suit against the DCSPCA and its employees or agents, Debra Marchetti, Mechelle Morgan, William Vernon, Christian Soxman, and Patricia Cotter, on claims related to the death of her cat Whiskers. (Compl. ¶¶ 1-7.) DCSPCA is based

in Media, Pennsylvania, and is authorized to euthanize animals under 3 P.S. § 16.1 et seq. (Compl. ¶ 2.)

On Friday, February 10, 2006, Plaintiff's cat Whiskers ran away from the family home and was captured by animal control officers and brought to the DCSPCA. (Compl. ¶ 9.) Plaintiff's search for Whiskers brought her to the DCSPCA on Sunday, February 12, 2006, where she met with Defendant Morgan and, through a window, saw her cat in a kennel. (Compl. ¶¶ 12-13, 17.) Morgan identified herself as an animal control officer who did not work for the DCSPCA, and she informed Plaintiff that she could not get her cat that day because the DCSPCA had already closed but that she could return for her cat the following day. (Compl. ¶¶ 14-16.) Morgan told Plaintiff that animals are held for four days. (Compl. ¶ 16.)

After meeting with Morgan, Plaintiff twice called 911 in attempts to obtain her cat that day. (Compl. ¶¶ 16, 21.) At first the 911 personnel told Plaintiff they would make some calls, but later an Upper Providence police officer told Plaintiff no one would be at the DCSPCA until the next day at 12:30pm. (Compl. ¶¶ 19-22.) Plaintiff placed a note on the front door of the DCSPCA with a description of Whiskers and returned to her home. (Compl. ¶¶ 24-25.) Earlier that day, she had left a message on DCSPCA's answering machine describing her cat and requesting help retrieving the cat. (Compl. ¶¶ 26-27.)

On Monday, February 13, 2006, Plaintiff arrived at the DCSPCA at approximately 12:40 p.m. (Compl. ¶¶ 26-27; Pl.'s Opp'n at 2.) Prior to Plaintiffs' arrival, Whiskers had been euthanized by Defendant Soxman, a DCSPCA employee, upon the authorization of Defendant Marchetti, who had not been made aware of Plaintiff's attempts to retrieve Whiskers. (Compl. ¶¶ 28, 30, 33, 36.) The DCSPCA had a policy of holding cats for 72 hours prior to euthanizing

them. (Compl. ¶ 31.) Whiskers was held for approximately 60 hours before being euthanized. (Compl. ¶ 32.) According to Plaintiff, Soxman erroneously believed that Whiskers' holding period had expired. (Compl. ¶ 35.)

Plaintiff alleges that various Defendants conspired to falsely tell Plaintiff that Whiskers had bitten an employee and needed to be euthanized pursuant to state law to determine if the animal was rabid. (Compl. ¶ 39.) Defendants Marchetti and Soxman completed a state form indicating that Soxman had been bitten, and they sent the form and the cat's head to a state laboratory for rabies testing. (Compl. ¶ 40.) Plaintiff alleges that these actions were in furtherance of the conspiracy. (Compl. ¶ 40.) On February 13, 2006, DCSPCA employees informed Defendant Vernon, Managing Director of the DCSPCA, that Plaintiff had been told a lie. (Compl. ¶ 41.) Vernon informed Plaintiff of that on February 27, 2006. (Compl. ¶ 41.)

In this action, Plaintiff claims conversion, fraud, emotional distress, negligence, and violations of 42 U.S.C. § 1983 for failure to train and supervise, invalid search and seizure, and violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. In support of her federal claims, Plaintiff alleges that the DCSPCA, Marchetti, and Soxman were acting under color of law relying on 7 Pa Code Sec16.22 (a)(4).[1] (Compl. ¶¶ 79, 83.)[2]

On February 11, 2008, Plaintiff filed suit against Defendants in the Delaware County

---

[1] 7 Pa. Code§ 16.22 provides special quarantine procedures for domestic animals suspected of having or having been exposed to rabies. According to the statute, "[a] domestic animal suspected of having rabies that is known to have bitten or otherwise exposed a human shall be immediately, humanely euthanized and subjected to an official rabies test." 7 Pa. Code § 16.22(a)(4).

[2] In her Complaint, Plaintiff erroneously cites 3 P.S. 16.22 (a) (4) rather than 7 Pa Code Sec16.22 (a)(4). (Pl.'s Mem. in Opp'n at 2.)

Court of Common Pleas. On March 17, 2008, Defendants DCSPCA and Vernon ("the moving defendants") removed the matter to this court. It appears to the court that the moving defendants did not serve their notice of removal upon the other named defendants. No party objected to the remand. On May 19, 2008, this court ordered a pre-trial conference to be held on June 5, 2008, and ordered Plaintiff's counsel to send notice of the pre-trial conference to all defendants who had not entered an appearance in the matter. (Doc. No. 12.) Plaintiff's counsel complied. (Doc. No. 13.) To date, no defendant other than the moving defendants has entered an appearance in this matter. The moving defendants filed this motion to dismiss on March 31, 2008.

## Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)) (stating that this statement of the Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007); see id. at 231 (stating that Twombly does not undermine the principle that the court must accept all of plaintiff's allegations as true and draw all reasonable inferences therefrom). To withstand a motion to dismiss under Rule 12(b)(6), "'[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 127 S.Ct. at 1965). Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (quoting Twombly, 127 S.Ct. at 1965); see Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 321 (3d

Cir. 2008) (following Phillips). This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965) (quotations omitted).

## Discussion

### I.  Plaintiff's Section 1983 Claims

Section 1983 provides remedies for deprivations of rights established by the Constitution. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [the plaintiff] of a right secured by the Constitution or the laws of the United States." Id. (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). If the claim involves alleged deprivation of a constitutional right, the court must determine whether the action was taken under color of law. This is a threshold matter. Versarge v. Twp. of Clinton, N.J., 984 F. 2d 1359, 1363 (3rd Cir. 1993). "Although a private person may cause a deprivation of [a constitutional] right, he may be subjected to liability under § 1983 only when he does so un-der color of law." See also Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)

Plaintiff claims that various defendants were acting under the color of state law when they relied on 7 P.S. § 16.22(a)(4) to falsely claim that Whiskers bit an employee and needed to be euthanized. For Plaintiff to allege a deprivation of her Fourth, Fifth, and Fourteenth Amendment

rights, she must demonstrate that her cat is deemed "property" under Pennsylvania law. Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (holding that state law determines whether a property right exists). There is no specific authority on this point.[3] However, the court need not decide whether Plaintiff has a property interest in her cat. For Plaintiff's Section 1983 claims to survive Defendants' motion to dismiss, she must allege that Defendants acted under color of state law when they euthanized Whiskers.[4] She has not done so.

There are three tests for state action for Section 1983 purposes: 1) the "public function" test; the "symbiotic relationship" test; and the "close nexus" test. Brown v. Philip Morris Inc., 250 F.3d 789 (3d Cir. 2001). Plaintiff has not pled that Defendants acted under color of state law according to any of the three tests.

The public function test asks whether the defendant performs a function that is "traditionally the exclusive prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974)). Plaintiff has not pled that the DCSPCA's function in euthanizing cats was a function that was traditionally the exclusive prerogative of the State. She has only alleged that the DCSPCA acted, or falsely claimed to act, pursuant to a Pennsylvania statute for the treatment of suspected rabid animals, but "[t]he mere fact that a business is subject to state regulation does not by itself convert its

---

[3] Under Pennsylvania law, dogs are deemed to be property. Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania, 929 A.2d 1169, 1181 (Pa. Super. 2007). There is no such authority regarding cats, but Pennsylvania law refers to cats as domestic animals, see, e.g., 7 Pa. Code § 16.23, and indicates the existence of a property interest in domestic animals, see 3 Pa. C.S.A. 2330 ("The [D]epartment [of Agriculture] shall have the authority to condemn and seize or cause to be destroyed any quarantined domestic animal. . . .").

[4] Plaintiff does not allege that the DCSPCA is a government agency. Cf. Snead, 929 A.2d at 1179 (holding that the SPCA of Pennsylvania is not a government agency).

action into that of the State for purposes of the Fourteenth Amendment." Jackson, 419 U.S. at 349. Further, "[t]hat a private entity performs a function which serves the public does not make its acts state action." Rendell-Baker, 457 U.S. at 842.

The symbiotic relationship test asks whether the government has "insinuated itself into a position of interdependence" with the defendant. Brown, 250 F.3d at 803 (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961). See also Benn v. Universal Health System, Inc., 371 F.3d 165, 173 (3d Cir. 2004) ("A symbiotic relationship demands a close association of mutual benefit between the state and the private entity or person.") (internal quotations and citation omitted). The symbiotic relationship test provides only a narrow basis for finding that private action may be attributed to the state. Crissman v. Dover Downs Entertainment, Inc., 289 F.3d 231, 242 (3d Cir. 2002) (en banc). Here, Plaintiff has not alleged facts that support a symbiotic relationship between the state and Defendants.

The close nexus test requires a plaintiff to show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson, 419 U.S. at 351. "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Here, again, Plaintiff has not pled circumstances that support a close nexus between the state and Defendants' actions euthanizing Plaintiff's cat. In other cases, Pennsylvania courts have found that the Pennsylvania SPCA was acting under color of state law for Section 1983 purposes when it seized and then euthanized plaintiffs' dogs. See Commonwealth v. Gonzales, 588 A.2d 528 (Pa. Super. 1991); Snead v. Society for the

Prevention of Cruelty to Animals, 929 A.2d 1169(Pa. Super. 2007); Allen v. Pennsylvania Society for the Prevention of Cruelty to Animals, 488 F. Supp. 2d 450 (M.D. Pa. 2006). However, these cases involved police powers granted to humane society officers. In this case, Plaintiff has alleged only that Defendant Morgan introduced herself to Plaintiff as an animal control officer who did not work for the DCSPCA. Plaintiff has not alleged that any police powers were granted to the DCSPCA, Defendant Morgan, or any other defendants.

The court finds that Plaintiff has not pled that Defendants acted under color of state law when they allegedly euthanized her cat. Therefore, Plaintiff's Section 1983 claims are dismissed.

### III. Plaintiff's State Law Claims

Having found that Plaintiff has failed to state a federal claim upon which relief can be granted, the only claims remaining in the matter are state law claims. The court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses Plaintiff's action.

Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367 is solely within the discretion of the district court. "[W]here the claim over which the district court has jurisdiction is dismissed before trial, the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). See also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (directing courts to take into account

principles of "judicial economy, convenience, and fairness to the litigants"). The United States Supreme Court in Gibbs explained that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726. The Third Circuit has held that supplemental jurisdiction "should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'" Shaffer v. Bd. of Sch. Dirs. of the Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (quoting Tully v. Motts Supermarkets, Inc., 540 F .2d 187, 196 (3d Cir. 1976)). The Third Circuit has found that "substantial time devoted to the case" and "expense incurred by the parties" does not constitute extraordinary circumstances. Tully, 540 F.2d at 196.

The court finds there are no extraordinary circumstances in this matter. No scheduling order has been issued by the court, there is no trial date, and no lengthy motion practice has occurred. Judicial economy and convenience to the parties do not weigh in favor of retaining supplemental jurisdiction, and comity favors allowing the state court to hear the state law claims in this matter.

Plaintiff's state law claims are remanded to the Court of Common Pleas of Delaware County.

## **Conclusion**

The court has dismissed Plaintiff's federal law claims and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. The matter is dismissed and remanded to the Court of Common Pleas of Delaware County.

An Order follows.